PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD
CIRCUIT
———

No. 11-2276
———

JOSE GONZALEZ, A007 638 441
Appellant

v.

SECRETARY OF DEPT OF HOMELAND SECURITY;
MICHAEL AYTES, Acting Deputy Director United States
Citizenship and Immigration Services;
JOHN THOMPSON, District Director United States
Citizenship and Immigration Services

———

On Appeal from the United States District Court for the
District of New Jersey
(D.C. Action No. 2:09-cv-03426)
District Judge: Honorable William J. Martini
———

1

Argued November 17, 2011

———

Before: FUENTES and CHAGARES, *Circuit Judges*,
and POGUE,[*] *Judge*

(Opinion Filed: March 19, 2012)

James V. Scarlata
56 Ferry St.
Newark, NJ 07105

Tarik D. Scarlata [argued]
1292 Yeamand Hall Road
Hanahan, SC 29410

*Attorneys for Petitioner-Appellant*

Tony West
Assistant Attorney General
Elizabeth Stevens
Assistant Director
Sherease Pratt [argued]
United States Department of Justice
Civil Division

———

[*] Hon. Donald C. Pogue, Chief Judge, United States Court of International Trade, sitting by designation.

2

Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20530

*Attorneys for Respondents-Appellees*

———

OPINION OF THE COURT
———

POGUE, *Judge*.

Jose Gonzalez ("Gonzalez" or "Appellant") appeals the District Court of New Jersey's grant of summary judgment dismissing his petition for review of the United States Citizenship and Immigration Service's ("USCIS") denial of his naturalization application. USCIS denied Gonzalez's application on good moral character grounds for giving false testimony in an immigration proceeding after Gonzalez affirmed during his I-751 interview that he had no children and later held out two children, YGP and AGP, as his own. The District Court held that because uncontradicted evidence indicated that Gonzalez lied in his I-751 interview, there was no genuine issue of material fact for trial. For the reasons that follow, we hold that no genuine issue of material fact existed on the record before the District Court and will affirm the District Court's grant of summary judgment.

3

# I. BACKGROUND

Gonzalez is a native of Panama and a citizen of Spain. He entered the United States as a non-immigrant visitor in or around 1998. Around 1999, Gonzalez met a United States citizen, Inez Otero, and the two were married on February 4, 2000. By virtue of his marriage to Otero, Gonzalez's status was adjusted to conditional lawful permanent resident on May 19, 2001. On August 3, 2004, Gonzalez and Otero appeared together at an interview in support of Gonzalez's Form I-751 Petition to Remove the Conditions on Residence ("Form I-751"). During the interview Gonzalez affirmed, under oath, his written statement on Form I-751 that he did not have children of his own. Following the interview, the conditions on Gonzalez's residence were lifted. On March 7, 2005, Gonzlez's marriage to Otero was legally dissolved through a Judgment of Divorce.

Otero was not the only woman with whom Gonzalez was romantically involved. Beginning in 1998, and through the duration of his marriage, Gonzalez was also romantically involved with Margarete Picinin. During this time, Picinin gave birth to two children: YGP in 2000 and AGP in 2001. Gonzalez supported Picinin financially before, during, and after her pregnancies—all while still married to Otero. In early August of 2004, prior to his divorce, Gonzalez moved out of his marital home and into the apartment occupied by Picinin and her children. On March 31, 2005, following the Judgment of Divorce, Gonzalez amended the birth certificates of YGP and AGP to reflect that he was their father.

4

On December 19, 2006, Gonzalez filed a Form N-400 Application for Naturalization ("Form N-400"). On his Form N-400, Gonzalez listed YGP and AGP as his children for the first time in the course of his immigration proceedings. Noting that this was inconsistent with his statements in the I-751 interview, USCIS determined that Gonzalez had provided false testimony during that interview and, on October 26, 2007, denied his petition on the grounds that he lacked the requisite good moral character.

Following administrative appeal, Gonzalez received a final denial of naturalization on June 12, 2009. On June 24, 2009, USCIS served on Gonzalez a Form I-862 Notice to Appear and filed the Notice with the Newark New Jersey Immigration Court, thereby initiating removal proceedings against him.[1] On July 10, 2009, Gonzalez filed a petition for *de novo* review with the District Court for the District of New Jersey pursuant to 8 U.S.C. § 1421(c) (2006).[2] On cross motions for summary judgment, the District Court denied Gonzalez's motion and granted the Government's motion, holding that "the uncontradicted evidence is that Petitioner, while under penalty of perjury, gave false evidence in order to receive a benefit in an immigration proceeding." *Gonzalez v. Napolitano*, No. 2:09-cv-03426, 2011 WL 941299, at *7 (D.N.J.

---

[1] The removal proceedings against Gonzalez remain pending as of this appeal.

[2] All subsequent citations to the United States Code will be to the 2006 edition unless otherwise noted.

Mar. 16, 2011). Gonzalez timely appealed the District Court's decision on May 10, 2011.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this action pursuant to 8 U.S.C. § 1421(c),[3] and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

We review a "District Court's grant of summary judgment *de novo*, applying the same standard the District Court applied." *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2007) (citing *Doe v. County of Centre, Pa.*, 242 F.3d 437, 447 (3d Cir. 2001)). When reviewing a grant of summary judgment the court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Stratechuk v. Bd. of Educ., S. Orange-Maplewood Sch. Dist.*, 587 F.3d 597, 603 (3d Cir. 2009) (quoting *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008)).

---

[3] Whether a district court may review a denial of naturalization pursuant to 8 U.S.C. § 1421(c) when a removal proceeding is pending is currently in dispute among the courts of appeals. This question was decided by the District Court in a separate opinion, *see Gonzalez v. Napolitano*, 684 F. Supp. 2d 555 (D.N.J. 2010), and raised before this court in a footnote of the Government's brief, *see* Appellee's Br. 2 n.2. Because we have not previously resolved this issue, it is discussed below in section III.A.

# III. ANALYSIS

## A. District Court Review under 8 U.S.C. § 1421(c)

Prior to 1990, the authority to naturalize aliens and the authority to remove aliens were vested, respectively, in the courts and the Attorney General. *See* 8 U.S.C. §§ 1251, 1421(a) (1988); *see also Shomberg v. United States*, 348 U.S. 540, 543–44 (1955). As naturalization and removal were mutually exclusive, this bifurcation of authority sometimes led to "a race between the alien to gain citizenship and the Attorney General to deport him." *Id.* at 544. In 1950, intending to end this race, Congress enacted 8 U.S.C. § 1429, providing that "no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding . . . ." 8 U.S.C. § 1429 (1952); *see also Shomberg*, 348 U.S. at 544–45.

In 1990, Congress conferred upon the Attorney General, "sole authority to naturalize persons as citizens of the United States . . . ." Immigration Act of 1990, Pub. L. No. 101-649, § 401(a), 104 Stat. 4978, 5038 (1990) (codified at 8 U.S.C. § 1421(a)). With authority for both naturalization and removal vested in the Attorney General, § 1429 was amended to read, "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding . . . ." 8 U.S.C. § 1429; § 407(d)(3), 104 Stat. at 5041 (amending 8 U.S.C. § 1429). Thus, priority for removal proceedings was maintained. The Immigration Act of 1990 did not, however, remove the courts entirely from the naturalization process. Rather, the Act reaffirmed the right of a

7

petitioner to judicial review by giving the district courts the power to review, *de novo*, decisions by the Attorney General denying naturalization. § 401(c), 104 Stat. at 5038 (codified at 8 U.S.C. § 1421(c)).[4]

We are now faced with the question, unresolved by the statute, of whether § 1429 forecloses judicial review pursuant to § 1421(c) whenever a removal proceeding is pending. Prior to the 1990 amendments, we held in *In re Terzich*, 256 F.2d 197, 200 (3d Cir. 1958), that courts could not exercise jurisdiction over naturalization so long as a removal proceeding was pending. However, we have since questioned, in a non-precedential opinion, whether *Terzich* remains valid in light of the 1990 amendments. *See Apokarina v. Ashcroft*, 93 F. App'x.

---

[4] Section 1421(c) reads in relevant part:

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

8

469, 471–72 (3d Cir. 2004). Today we resolve the question raised in *Apokarina* by holding that district courts have jurisdiction to review a denial of naturalization during the pendency of removal proceedings and may issue a declaratory judgment regarding the lawfulness of such denial.

In resolving this question, we must address both the district courts' jurisdiction and their capacity to grant effective relief. On the issue of jurisdiction, we find the Ninth Circuit's analysis of the issue compelling. *See De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042 (9th Cir. 2004). In *Bellajaro*, the Ninth Circuit found that

> [n]othing in the text [of § 1421(c)] limits the jurisdiction so conferred to review of denials when there is no removal proceeding pending. By the same token, the text of § 1429 – which does constrain consideration of naturalization applications during the pendency of a removal proceeding – clearly applies to the Attorney General. There is no hint in the language of § 1429 that it also applies to the courts.

*Id.* at 1046. Based on the plain language of the statute, we concur with the Ninth Circuit that there is "no textual basis for concluding that jurisdiction vested in district courts by § 1421(c) is divested by § 1429." *Id.*; *see also Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004) ("[W]e do not read the amended § 1429 as divesting the district courts of the jurisdiction granted under § 1421(c).").

9

The Ninth Circuit ultimately concluded that the district court could not review the denial of naturalization in *Bellajaro* because, while § 1429 did not remove the court's jurisdiction, it did limit the scope of review. *Bellajaro*, 378 F.3d at 1043–44. The Ninth Circuit held that "where . . . the INS has denied an application for naturalization on the basis of § 1429 because removal proceedings are pending, the district courts have jurisdiction to review the denial but the scope of review is limited to 'such' denial." *Id.* at 1046–47; *see also Zayed*, 368 F.3d at 906 ("Where the INS has denied an application for naturalization on the ground that removal proceedings are pending, therefore, the district court's de novo review is limited to review of that threshold determination."). A denial by the Attorney General pursuant to § 1429, however, is different from the situation presented in this case, where Gonzalez's naturalization application was denied by the Attorney General *on the merits*. As the decision under review is on the merits, jurisdiction is appropriate for a review and decision on the merits pursuant to § 1421(c). *Cf. Bellajaro*, 378 F.3d at 1046 ("[A decision on the merits] is a determination that the Attorney General has not yet made because of § 1429, and it is one that the district courts, which no longer have the authority to naturalize, can not make in the first instance.").

Resolving the question of jurisdiction, however, is not the end of the matter. Having decided that district courts have jurisdiction, we must now address the more difficult issue of what, if any, relief a district court may grant.[5] This issue is more

_____

[5] Unlike the dissent, we do not think we can affirm the

10

vexed because, pursuant to § 1421(c), the *sole* authority to naturalize rests with the Attorney General, and such authority is limited by § 1429. This has led the Sixth Circuit to declare that "the restraints that § 1429 imposes upon the Attorney General prevent a district court from granting effective relief under § 1421(c) so long as removal proceedings are pending." *Zayed*, 368 F.3d at 906.

---

District Court's decision to take jurisdiction and decide the case on the merits without addressing the capacity to grant relief. In order for a district court to decide the case on the merits, it must it must be able to provide a meaningful remedy – otherwise dismissal for failure to state a claim would be the appropriate outcome as in *Zayed*, 368 F.3d at 906 ("[W]e do not read the amended § 1429 as divesting the district courts of the jurisdiction granted under § 1421(c). . . . [T]he restraints that § 1429 imposes upon the Attorney General prevent a district court from granting effective relief under § 1421(c) so long as removal proceedings are pending."), and *Ajlani v. Chertoff*, 545 F.3d 229, 241 (2d Cir. 2008) ("[W]e conclude that the district court properly dismissed Ajlani's § 1447(b) claim [permitting district court review if a petition for naturalization is not decided within 120 days] for failure to state a claim on which naturalization relief could be granted while removal proceedings were pending.").

11

We are in agreement with the Sixth Circuit that Congress did not "intend[] the priority of removal proceedings over naturalization proceedings to be altered by the 1990 amendments." *Id.* at 905–06. In light of this conclusion, we also agree that a district court cannot order the Attorney General to naturalize an alien who is subject to pendent removal proceedings. *See id.* at 906 n.5 (disagreeing with *Ngwana v. Att'y Gen.*, 40 F. Supp. 2d 319, 322 (D. Md. 1999) (ordering alien naturalized despite pendency of removal proceedings)).[6] However, we do not conclude that district courts are, therefore, precluded from hearing a denial of naturalization case on the basis that no effective relief can be granted.[7] Rather, we find

---

[6] For this same reason, although we agree with the District Court's determination that it had both jurisdiction and the capacity to grant relief in this case, we do not endorse the District Court's rationale. The District Court found that § 1429's prohibition on the Attorney General "considering an application for naturalization" is inapplicable to a court order of naturalization because an order is not an application. *Gonzalez*, 684 F. Supp. 2d at 562–63. Thus, a court order to naturalize an alien while in removal proceedings does not run afoul of the post-1990 version of § 1429. *Id.* We cannot endorse the District Court's reasoning because it does not comport with the priority of removal proceedings. Unlike the District Court we find no reason to believe that the 1990 amendments altered the priority of removal that was established with the introduction of § 1429 in 1950. *See Zayed*, 368 F.3d at 905–06.

[7] In this regard, we disagree with the Second Circuit's

12

that declaratory relief is appropriate and sufficient in this context.



holding in *Ajlani*, 545 F.3d at 241 and the Fifth Circuit's holding in *Saba-Bakare v. Chertoff*, 507 F.3d 337, 340–41 (5th Cir. 2007).

The Sixth Circuit raised the possibility of declaratory relief in *Zayed* but did not endorse it for two reasons. First, the plaintiff in *Zayed* did not request declaratory relief. *Zayed*, 368 F.3d at 906. Second, the Court determined that declaratory relief would likely be effective only in light of the Board of Immigration Appeals' ("BIA") decision in *In re Cruz*, 15 I. & N. Dec. 236 (1975). *Zayed*, 368 F.3d at 906–07. In *In re Cruz*, the BIA held that a court declaration could provide prima facie eligibility for 8 C.F.R. § 1239.2(f) (2011) (formerly 8 C.F.R. § 242.7), which "permit[s] the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors . . . ." The BIA reasoned that, because "neither [the BIA] nor immigration judges have authority with respect to the naturalization of aliens," prima facie eligibility for naturalization could be established only "by an affirmative communication from the [Immigration and Naturalization Service[8]] or by declaration of a court . . . ." *In re Cruz*, 15 I. & N. Dec. at 237. However, the Sixth Circuit noted that whether *In re Cruz* remained good law after the 1990 amendments to the INA is in question. *Zayed*, 368 F.3d at 907 n.6 (citing *Apokarina*, 93 F. App'x at 472).

---

[8] Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the Immigration and Naturalization Service has ceased to exist, and its enforcement functions have been transferred to the Department of Homeland Security.

Since *Zayed*, the BIA has reaffirmed its decision in *In re Cruz*.  *See In re Hidalgo*, 24 I. & N. Dec. 103, 106 (2007); *see also Zegrean v. Att'y Gen.*, 602 F.3d 273, 275 (3d Cir. 2010) (deferring to the BIA's interpretation of § 1239.2(f)). Recognizing that the 1990 amendments to the INA divested the district courts from jurisdiction to grant or deny applications for naturalization in the first instance, the BIA found that an affirmative declaration from the Department of Homeland Security would be required to establish prima facie eligibility. *See In re Hidalgo*, 24 I. & N. Dec. at 106.  We are confident that the BIA would also accept the declaration of a district court properly exercising its jurisdiction under 8 U.S.C. § 1421(c). But we do not rest our decision on this basis.  Rather, for the reasons discussed below, we find that declaratory relief is appropriate notwithstanding whatever role it may play in terminating a removal proceeding under 8 C.F.R. § 1239.2(f).

Declaratory relief strikes a balance between the petitioner's right to full judicial review as preserved by § 1421(c) and the priority of removal proceedings enshrined in § 1429.  Maintaining the petitioner's right to judicial review of a naturalization denial is consistent with Congressional intent, as evidenced by the creation of § 1421(c).  Rather than vest full and final authority to grant or deny a naturalization application with the Attorney General, Congress gave the district courts the power of *de novo* review.[9]  To hold that district courts are

---

[9] The legislative history of the Immigration Act of 1990 also supports this view.  In discussing HB 1630 ─ the House companion bill to SB 358, which introduced the Immigration

15

precluded from review by § 1429 whenever removal proceedings are pending raises the possibility that review may be cut off by the actions of the Attorney General. *See Kestleboym v. Chertoff*, 538 F. Supp. 2d 813, 818 (D.N.J. 2008); *Ngwana*, 40 F. Supp. 2d at 321─22. Such a possibility is contrary to the intent of Congress as expressed in the structure of the statute. Declaratory relief, in the form of a judgment regarding the lawfulness of the denial of naturalization, permits the alien a day in court, as required by § 1421(c), while not upsetting the priority of removal over naturalization established in § 1429 because it affects the record for─but not the priority of─removal proceedings, thereby preserving both congressionally mandated goals, a *de novo* review process and the elimination of the race to the courthouse.

## B. Genuine Issue of Material Fact

Having determined that the District Court's review of

and Nationality Act of 1990 ─ on the floor of the House, the bill's sponsor, Rep. Bruce Morrison, remarked that "H.R. 1630 does not take away any of the judicial review rights accorded applicants today." 135 Cong. Rec. 16,996 (1989). The Senate Judiciary Committee wrote in its Report, that "[t]he Committee strongly believes that although few cases for naturalization have been denied, citizenship is the most valued governmental benefit of this land and applicants should receive full recourse to the Judiciary when the request for that benefit is denied." S. Rep. No. 101-187, at 14 (1989).

Gonzalez's naturalization denial was proper, we address whether summary judgment was properly granted in favor of the Appellee. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order for Gonzalez to succeed in his naturalization petition, he must show that he is a person of good moral character. 8 U.S.C. § 1427(a).[10] The INA defines "good moral character" to exclude any person "who has given false testimony for the purpose of obtaining any benefits" under the immigration and nationality laws of the United States. 8 U.S.C. § 1101(f)(6).[11] The Supreme Court has held that § 1101(f)(6)

_____

[10] "No person . . . shall be naturalized unless such applicant . . . during all periods referred to in this subsection has been and still is a person of good moral character . . . ." 8 U.S.C. § 1427(a).

[11] "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was one who has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. § 1101(f)(6). Unfortunately for Gonzalez, the statute will not

17

requires "oral statements made under oath . . . with the subjective intent of obtaining immigration benefits." *Kungys v. United States*, 485 U.S. 759, 780 (1988) (citations omitted). A misrepresentation under § 1101(f)(6) need not be material to undermine an applicant's good moral character. *Id.* ("[The statute] denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits.").

---

permit acts of good moral character—such as taking responsibility for, and giving priority to, his natural family—to be recognized as exception or mitigation to his testimony.

18

Two key facts are undisputed in this case: (1) Gonazlez stated in his I-751 interview that he had no children of his own, and (2) Gonzalez has now recognized YGP and AGP as his children.[12] What is in dispute is whether there are material facts sufficient to raise a genuine dispute over Gonzalez's *subjective intent* to give false testimony during his I-751 interview.

Gonzalez makes three arguments supporting the existence of a genuine dispute. In his first argument, Gonzalez asserts that his petition cannot be denied on summary judgment because there is no admissible evidence on the record that he gave false testimony. Appellant's Br. 14–17. Gonzalez argues that the declaration of USCIS officer Makesha Clark, Declaration of Makesha Clark, App. 203–04 (hereinafter "Clark Decl."), is inadmissible hearsay and cannot be considered on summary judgment. Appellant's Br. 15–16.[13] Because this is the

---

[12] We, like the District Court, take judicial notice of the amended birth certificates for YGP and AGP listing Gonzalez as the father. Amended Birth Certificate of YGP, App. 231; Amended Birth Certificate of AGP, App. 235.

[13] Gonzalez also argues that the Clark Declaration is not evidence that Gonzalez gave false testimony because it is not clear whether Otero or Gonzalez made relevant statements in the interview. This argument is without merit as Clark's Declaration clearly states that "[Gonzalez] was asked to orally affirm his written answers to each question. . . . In his sworn testimony Mr. Gonzlez represented that he . . . had no children." Clark Decl. ¶¶ 5 & 7, App. 204.

19

only evidence of oral statements by Gonzalez, if it is inadmissible there is no evidence on the record that Gonzalez gave false testimony. *See Kungys*, 485 U.S. at 780 ("'[T]estimony' is limited to oral statements made under oath.").

Affidavits and declarations considered on summary judgment must, "set out facts that would be admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4). Hearsay statements are inadmissible, Fed. R. Evid. 802, and the Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

Clark's declaration is not hearsay because it is not being offered for the truth of the mattered asserted, i.e., that Gonzalez did or did not have children; rather, Clark's declaration is being offered to prove what Gonzalez said at his I-751 interview. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee's note; *see also Anderson v. United States*, 417 U.S. 211, 219–20 (1974) (holding statements non-hearsay where "the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false" (footnotes omitted)).

As non-hearsay, Clark's declaration would be admissible at trial; therefore, it is admissible for the purpose of summary

judgment.

Gonzalez next argues that he could not have made a false statement because, at the time of his I-751 interview, YGP and AGP were not his children according to the definition of a child in the INA. Appellant's Br. 9‒14. Gonzalez asserts that YGP and AGP, who were illegitimate at the time of Gonzalez's I-751 interview, and therefore do not meet any of the enumerated definitions of a child found at 8 U.S.C. § 1101(b)(1). Whether YGP and AGP fall outside the statutory definition is irrelevant because that definition does not control in the context of Form I-751 or the I-751 interview.

The definition of a child found in § 1101(b)(1) is a statutory definition. It establishes the meaning of the word "child" when that word is used in the context of the INA, not elsewhere. When Gonzalez was asked to fill out Form I-751 and to affirm his answers during the interview, he was not being asked to enforce or interpret the INA.[14] To assume such is to

---

[14] Had the immigration benefit Gonzalez was seeking during his I-751 interview depended upon whether YGP and AGP were his children, and was the question of whether YGP and AGP were legally children of Gonzalez under the INA before this court, then 8 U.S.C. § 1101(b)(1) would be relevant. That, however, is not the situation in this case. Before us is the question of whether Gonzalez knew he had children and lied about it to immigration authorities. *See Fiallo v. Bell*, 430 U.S. 787, 788‒89 (1977) (noting that 8 U.S.C. § 1101(b)(1) exists to provide immigration preferences to some and deny them to others, particularly illegitimate children seeking preference through the paternal relationship and vice-versa). As Gonzalez was not seeking immigration preference based on his parent-child relationship his recourse to this definition is unwarranted.

21

export a term of art from the statute into conventional usage, which invites unnecessarily legalistic and absurd outcomes.[15]

Because the statutory definition is inapplicable to Gonalez's case and applying the definition is unwarranted and ill-advised, we hold that this argument is unavailing.

Gonzalez's final argument is that he lacked the subjective intent to give false testimony because he did not believe AGP and YGP were his children; in short, Gonzalez argues that, at the time of his I-751 interview, he honestly believed he had no children. Appellant's Br. 17–19. At issue is whether Gonzalez's own statements in this regard are sufficient to survive summary judgement on the question of his intent to give false testimony.

As a general proposition, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citation omitted) (internal quotation marks omitted); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89. Though we have held that under certain circumstances, "a sworn assertion of an absence of knowledge

---

[15] Section 1101(b)(1) defines a child first as "an unmarried person under twenty-one years of age," and then goes on to define various categories of "child" for the purposes of the immigration statute. § 1101(b)(1). According to Gonzalez's argument, if an individual were asked whether he or she has children during an immigration proceeding, this question would not include any progeny who had married or passed their twenty-first birthday. It stretches reason to think that USCIS does not consider these persons children of the applicant or that Congress intended to create such a situation when it wrote the definition of a child into the INA.

can suffice to create a genuine issue of material fact," we have also noted that "a bare but sworn assertion of a claimant's lack of knowledge will not suffice to create a material dispute of fact where that assertion is impeached by a well supported showing to the contrary." *United States v. 717 S. Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993).

In this case, Gonzalez's own, sworn statements are insufficient to survive summary judgment. First, we note that the District Court made several findings that it determined were "revelatory that [Gonzalez] is the father." *Gonzalez*, 2011 WL 941299, at *5. These findings included:

> He was having relations with the mother at around the time each child was conceived. His relationship with the mother continued over time and continues to this day. He helped support the mother over the course of her pregnancy, and increased his support when, in the late stages of pregnancy, she was unable to work. When the children were born, the mother told him that he was the father. There is some evidence to support the inference that he took tax deductions for these children in the years immediately following their births. He allowed the children to call him "dad." And, as explained, [Gonzalez] amended (with the mother) the birth certificates.

*Id.* (footnote omitted). Counterposed to the evidence relied upon by the District Court is only Gonzalez's own statements that he did not know or believe that YGP and AGP were his children at the time of his I-751 interview. However, any issue of material fact raised by Gonzalez's assertion is insufficient in light of the circumstantial evidence of his knowledge. He had relations with the mother around the time of conception; he was

23

told by the mother that the children were his; he developed a relationship with the children; he did not adopt the children but amended the birth certificates to reflect himself as the biological father—all of which indicates that if Gonzalez was ignorant of his paternal relationship it was a willful ignorance. *Cf. 717 S. Woodward St.*, 2 F.3d at 534 ("An affidavit of the claimant denying knowledge is competent evidence tending to show this and *in the absence of other evidence rendering it incredible*, such an affidavit creates a genuine issue of material fact." (emphasis added)).

Because state of mind is the key issue on the merits, Gonzalez's own statements cannot be dismissed simply because they are bare and self-serving. However, the circumstantial evidence offered by the Appellee both undermines and outweighs Gonzalez's claim of ignorance, such that this is a case where "the court, based on all of the evidence, can say with confidence that a rational trier of fact could not credit the claimant's denial . . . ." *Id.*

Because there is no genuine dispute regarding Gonzalez's false testimony in his I-751 interview, we find the District Court's grant of summary judgment in favor of the Appellee appropriate.

## IV. CONCLUSION

For the foregoing reasons we will affirm the decision of the District Court granting summary judgment in favor of the Defendant-Appellee.

24

<u>Gonzalez v. Sect'y of Dep't of Homeland Sec.</u>, No. 11-2276


CHAGARES, Circuit Judge, concurring in part and dissenting in part.

While I concur with my learned colleagues that the District Court had jurisdiction to review a denial of naturalization while removal proceedings were pending and that the District Court properly granted summary judgment in favor of the Secretary, I respectfully disagree with the majority insofar as it determined that Gonzalez could have received declaratory relief had he proven his case on the merits.

I believe it is unnecessary and perhaps problematic for the Court to decide this thorny issue for several reasons. First, we conclude (as did the District Court) that Gonzalez's claims fail on the merits, so there is no need to opine about relief that might have been available to him had he succeeded. See <u>Scheidler v. Nat'l Org. for Women, Inc.</u>, 537 U.S. 393, 397 (2003) (declining to reach the issue of the availability of private injunctive relief under 18 U.S.C. § 1964(c) where there was no underlying violation of the RICO statute); <u>Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.</u>, 171 F.3d 912, 935 n.20 (3d Cir. 1999) (same); <u>see</u> <u>generally</u> 13 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3531.3 (3d ed. 2008) (noting "our tradition that unnecessary judicial decisions should be avoided"). Second, Gonzalez never specifically requested declaratory relief and, of course, the District Court never granted him declaratory relief. Third, the parties did not brief this issue on appeal, so I believe we

should avoid resolving the issue.  See United States v. McKie, 73 F.3d 1149, 1155 (D.C. Cir. 1996) (noting "the parties did not brief the issue and we generally hesitate to decide non-jurisdictional questions without briefing"); see also Bd. of Trs. v. Garrett, 531 U.S. 356, 360 n.1 (2001) (declining to decide whether employment discrimination claims can be brought under Title II of the Americans With Disabilities Act "when the parties have not favored us briefing on the statutory question"); NLRB v. Washington Heights-W. Harlem-Inwood Mental Health Council, Inc., 897 F.2d 1238, 1248 (2d Cir. 1990) (declining to resolve an issue "because the parties did not brief this issue and because its resolution is not necessary to our holding today").  Fourth, and as the majority acknowledges, our decision in this regard is contrary to that reached by three of our sister Courts of Appeals and, as a result, creates a split in authority.  See generally 13 Wright, Miller, & Cooper, supra, § 3531.3 ("The concern that unnecessary decisions be avoided has its most important justification in the prospect that unnecessary decisions may be wrong decisions.").

For these reasons, I would avoid reaching the issue and would leave the issue to another day when its resolution is necessary and the issue is properly briefed by the parties.