**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3040
_____

GREGORY F. ROBINSON,
Appellant

v.

COMMISSIONER CARL C. DANBERG; WARDEN PERRY PHELPS;
MAJOR SCAROBOROUGH; STAFF LT. KAREN HAWKINS;
SGT. WILFRED BECKLES; SGT. STANFORD HENRY;
CPL SGT. ANGELINA DEALLIE; SGT. VERONICA DOWNING;
C/O NICKOLAS MOHR; LT. MARK DAUM; LT. PAUL HARVEY;
LT. TRADER; LT. KOLAWCHE AKINBAYO; C/O TRACEY HARRIS;
C/O SCOTT; C/O CARMELINO R. SEATON; C/O JASON M SCHAFFER;
C/O MARTIN BURTON; C/O RODDOCKER; C/O KURKLIN;
BRIAN ENGREM, Law Librarian; SGT. VALEZ; SGT. EVERETT; C/O HICKS;
SGT. KESHAW TRAVIES; LT. STANLEY BAYNARD; C/O WILLIAM MORRIS;
C/O GEORGE PIERCE; C/O WAGNER; C/O GREGORY HALL;
LT. LARRY SAVAGE; C/O KENWYN D'HEUREUX; C/O ANDREW CHASE;
SGT. ROY FORAKER; C/O ORLANDO DEJESUS; STAFF LT. STEPHEN FURMAN;
LT. THOMAS SEACORD; CMS MEDICAL DEPARTMENT CMS INC.;
DELAWARE DOC; NURSE BETTY BRYANT; NURSE LISA SUGARMAN;
NURSE CHRISTINA; NURSE AMIN; NURSE CAROL BIANCHI; NURSE MARK;
NURSE DIVINE EBWELLE; John Doe, Nurse (Took blood on 12/7/09 & 2/8/10)

_____

On Appeal from the United States District Court
for the District of Delaware
(D.Del. No. 1-10-cv-00362)
District Judge: Honorable Sue L. Robinson

_____

Argued: April 14, 2016

Before: AMBRO, SMITH,[*] and KRAUSE, *Circuit Judges*

(Filed: December 19, 2016)

David A. Felice, Esq. (Argued)
Bailey & Glasser
2961 Centerville Road, Suite 302
Wilmington, DE 19808
        *Counsel for Appellant*

Joseph C. Handlon, Esq. (Argued)
Ophelia M. Waters, Esq.
Delaware Department of Justice
820 North French Street, 6th Floor
Wilmington, DE 19801
        *Counsel Appellees*

—————————————

OPINION[†]

—————————————

KRAUSE, *Circuit Judge*

Gregory Robinson appeals a District Court order granting summary judgment in

favor of Appellees, various prison officials, on Robinson's Eighth and Fourteenth

Amendment claims alleging excessive use of force and unlawful conditions of

confinement. For the reasons set forth below, we will affirm in part, reverse in part, and

vacate in part. This matter will be remanded for proceedings consistent with this opinion.

---

[*] Honorable D. Brooks Smith, United States Circuit Judge for the Third Circuit, assumed Chief Judge status on October 1, 2016.

[†] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

**I. Background**

Gregory Robinson was convicted in 2008 of felony possession of a dangerous weapon and sentenced to eight years incarceration at the James T. Vaughn Correctional Center in Delaware. He raises a number of pretrial and post-conviction excessive-force and condition-of-confinement claims spanning from 2008, when he was in pretrial detention, to 2010, when he was serving his sentence.

**II. Jurisdiction and Standard of Review**

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over an order granting summary judgment, applying the same standard as the District Court. *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, courts must refrain from weighing the evidence or making credibility determinations, *id.* at 255, and are required to "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor," *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012). Nonetheless, the nonmoving party must offer more than a "mere 'scintilla of evidence'"

to create a genuine issue of material fact, *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (quoting *Anderson*, 477 U.S. at 252), and conclusory affidavits are insufficient to survive summary judgment. *See MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 485 n.6 (3d Cir. 2013) ("Summary judgment is proper only where the pleadings, discovery, and non-conclusory affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.").

### III. Discussion

Robinson appeals nine claims from the District Court's entry of summary judgment: one pretrial excessive-force claim, two post-conviction excessive-force claims, three pretrial condition-of-confinement claims, and three post-conviction condition-of-confinement claims. We analyze his pretrial claims under the Fourteenth Amendment and his post-conviction claims under the Eighth Amendment.

### A. Pretrial Excessive Force

Robinson first raises a pretrial excessive force claim against Correctional Officer Beckles for allegedly injuring his hand while uncuffing him in his cell. According to Robinson, when Beckles returned Robinson to his cell following a disagreement between them, Beckles "tried to hit [Robinson] in the back with the [cell] door, but . . . caught [his] foot" instead. J.A. 130. Once Robinson was secured in his cell, Beckles allegedly uncuffed him by "put[ting] his foot on the door and . . . yank[ing] the left cuff off[,] . . . split[ting] the top of [Robinson's] hand." J.A. 130. Beckles' incident report and

4

deposition testimony gave a different narrative. He asserted that Robinson ignored "several direct order[s] to come [to the cell door flap] to be uncuffed." S.A. 2. When Robinson finally complied, and Beckles started to uncuff him, Robinson "tr[ied] to yank his hand away from [Beckles]," Appellant's Br. 7 (quoting the incident report), which presented a security concern because "an open cuff [could be used] as a weapon." S.A. 2. Neither Beckles' incident report nor his deposition testimony mentions hitting Robinson's foot with the cell door.

Robinson's pretrial excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). To demonstrate a due process violation, a detainee must prove "that the force purposely or knowingly used against him was objectively unreasonable," meaning "that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). We consider the so-called *Kingsley* factors: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id.*

5

The District Court granted judgment in favor of Beckles, finding Robinson's "minor" or "minimal" injuries were insufficient to support a Fourteenth Amendment claim. *Robinson v. Beckles*, 117 F. Supp. 3d 528, 536 (D. Del. 2015). We conclude the District Court erred by focusing exclusively on the severity of Robinson's injury at the expense of the other *Kingsley* factors. A detainee's injury is only one of several factors to be considered in determining whether the application of force was punitive, *Kingsley*, 135 S. Ct. at 2473, and while we have held in the context of the Eighth Amendment that "the degree of injury is relevant[,] . . . there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for . . . excessive force." *Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000). The touchstone of a due process claim is whether the application of force was punitive. *Kingsley*, 135 S. Ct. at 2473. The District Court thus erred by granting summary judgment on Robinson's claim solely on the ground that his injuries were too "minor" to support a due process claim. Rather, the Court should also have considered the remaining *Kingsley* factors – the relationship between the need for the use of force and the amount of force used, any effort made by Beckles to temper or limit his use of force, the severity of the security problem at issue, the threat reasonably perceived by Beckles, and whether Robinson was actively resisting.

Moreover, in making that assessment, the District Court was duty bound to view the facts in the light most favorable to Robinson and draw all inferences in his favor. *Gonzalez*, 678 F.3d at 257. The question at summary judgment, after all, is simply

6

whether a genuine issue of material fact exists for the jury. Thus, even recognizing that Beckles offered a different account of what transpired and the fact that a reasonable jury may well credit his version of the events, the District Court was required to view the facts in the light most favorable to Robinson, taking into account his deposition in which he stated he was securely locked in his cell and offered no resistance to Beckles at the time of the alleged incident. *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (accepting inmate's testimony as true for purposes of summary judgment and noting that "an inmate who is proceeding pro se . . . is in a decidedly difficult position from which to generate 'record evidence' on his behalf . . . [and,] under these circumstances, his affidavits . . . are about the best that can be expected from him [at the summary judgment phase of] the proceedings" (quoting *Brooks*, 204 F.3d at 108-09 n.7)). On that basis, a reasonable factfinder could conclude Beckles' use of force was excessive because Robinson, according to his own account, was securely locked in his cell and was offering no resistance when Beckles removed his handcuffs.

In sum, given that the District Court failed to address all the relevant *Kingsley* factors and erroneously rejected Robinson's due process claim solely on the ground Robinson's injuries were too minor as to this claim, we will vacate the District Court's judgment and remand for further proceedings.[1]

---

[1] Notwithstanding his agreement that the District Court erred by focusing exclusively on the severity of the gash to Robinson's hand, Chief Judge Smith would affirm the grant of summary judgment on this claim. Chief Judge Smith does not believe that a reasonable factfinder, viewing the situation "from the perspective of a reasonable

**B. Post-conviction Excessive Force**

Robinson raises two post-conviction excessive force claims, one against Correctional Officer Downing and one against Correctional Officer DeAllie. In his first claim, he alleges Downing struck him in the face during a cell "shakedown" for no reason. Appellant's Br. 10. As to the second claim, Robinson alleges DeAllie maced him while he was locked in his cell.

Robinson's post-conviction excessive-force claims are governed by the Eighth Amendment, which protects convicted prisoners from cruel and unusual punishment. Force amounts to cruel and unusual punishment when it is applied "maliciously and sadistically for the very purpose of causing harm" instead of "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Like the *Kingsley* factors, several factors should be considered: "[1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] . . . the extent of injury inflicted, . . . [4] the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials . . . , and [5] any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal quotation mark

---

officer on the scene," including the officer's knowledge that Robinson had not been compliant in the showers and that he had yet to have his handcuffs removed while secured in this cell, and mindful of the security concern posed by an open handcuff, could conclude that the "force" used against [Robinson] in removing the handcuffs was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473.

omitted) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.)). The extent of an injury "may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," but "[t]he absence of serious injury" while "relevant to the Eighth Amendment inquiry . . . does not end it." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

The District Court analyzed Robinson's claim against Downing for allegedly striking him in the face under the Due Process Clause of the Fourteenth Amendment, noting that "[p]laintiff also claims his due process rights were violated on two days in September 2009 when defendant Downing allegedly filed false reports to cover up the fact that she hit him in the mouth and caused injury." *Robinson*, 117 F. Supp. 3d at 541. But the District Court's opinion is devoid of any consideration of Robinson's Eighth Amendment claim, i.e., that Downing's alleged act of striking Robinson was an Eighth Amendment violation in the first place. At oral argument, counsel for Appellees asserted that, although the District Court only mentioned Robinson's Due Process claim, it rendered an Eighth Amendment ruling implicitly. We disagree. The District Court's decision turned on Downing's alleged filing of a false report after the incident, a question grounded in the Fourteenth Amendment's Due Process clause. *Id.* Robinson's Eighth Amendment claim, however, was based on Downing's alleged use of excessive force in the striking incident, a subject not even mentioned by the District Court in this part of its analysis, much less analyzed under relevant Eighth Amendment case law. Accordingly,

9

the District Court's grant of summary judgment against Robinson on this claim will be vacated and remanded for further consideration.

The second post-conviction excessive-force claim relates to an incident in which Correction Officer DeAllie allegedly maced Robinson while he was locked in his cell. The District Court found that there was "no incident reports or logbook entries evidencing th[e] incident" and the evidence did not "prove" that DeAllie "sprayed the mace." *Robinson*, 117 F. Supp. 3d at 543. However, Robinson's allegation was buttressed not only by his own declaration, *see Giles*, 571 F.3d at 326 (suggesting that an inmate's affidavit may be sufficient to create a genuine dispute of fact), but also by a declaration by inmate Ernest Evans, who stated that DeAllie maced Robinson while he was in his cell and that Robinson's "shirt had to be tied around his face," J.A. 194, and an affidavit by inmate Kevin Jackson, who "stood in [his] cell door and watched Sgt. DeAllie mace . . . Robinson for no just cause," J.A. 209. Moreover, during an internal investigation into the incident, an inspector observed "a slight discoloration to the side of [Robinson's] sneaker." Appellant's Br. 13-14 (quoting the investigation report). And prison records demonstrate that the ventilation was turned off in the cell block in which Robinson was housed on the day he complained about the alleged macing incident.

Notwithstanding its conclusion that there was insufficient evidence that the macing incident occurred, the District Court also found that, even if it did occur, Robinson's claim would fail because DeAllie's use of force was *de minimis*. *Robinson*, 117 F. Supp. 3d at 543-44. According to Robinson's declaration, and declarations made

10

by inmates Evans and Jackson, however, Robinson was locked in his cell and posed no imminent threat to staff and inmates at the time he was allegedly maced. Indeed, Appellees' counsel conceded at oral argument that there was no "legitimate penological reason" for spraying mace into a locked cell when the inmate does not "constitute a danger to anyone or himself," describing such conduct as "reprehensible." *See* Oral Argument at 24:20-25:10. Moreover, the injuries alleged were not inconsequential. Robinson asserted that the mace caused discomfort, made him cough, and forced him to wrap a towel around his face, Evans likewise asserted that Robinson had to tie his shirt around his face, and Jackson asserted that Robinson was unable to breathe at one point.

Drawing all inferences in Robinson's favor, there is sufficient evidence for a reasonable factfinder to conclude that DeAllie maced Robinson, and that the use of force was more than *de minimis* force. Accordingly, we will reverse the entry of summary judgment on Robinson's Eighth Amendment claim against DeAllie for the macing incident.

### C. Pretrial Conditions of Confinement

Robinson raises three pretrial conditions-of-confinement claims on appeal, alleging that: (1) Correctional Officers Akinbayo and Rodocker left Robinson in his cell with toilet water for more than seven hours, (2) Correctional Officer Beckles moved Robinson to a blood-stained cell, which he was forced to clean without protective equipment or cleaning materials, and (3) Correctional Officer Henry allowed an inmate to spray urine into Robinson's cell. The District Court held that there was insufficient

11

evidence of the duration and nature of his exposure to these conditions to support a due process claim, *Robinson*, 117 F. Supp. 3d at 538, and we agree with the District Court's entry of summary judgment on these claims.

The Due Process Clause of the Fourteenth Amendment prohibits conditions of confinement that "amount to punishment." *Bell*, 441 U.S. at 535. To determine whether conditions are punitive, we ask (1) whether there are any "legitimate purposes . . . served by [the] conditions" and (2) "whether [the] conditions are rationally related to [those] purposes." *Union Cty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983).

The evidence in support of Robinson's pretrial conditions claims is meager at best. While he testified to the presence of blood, urine, and toilet water, he provided few, if any, details about each incident. In fact, the only evidence that his toilet overflowed was Robinson's deposition testimony in which he denied that the flooding incident was his fault. He presented no evidence concerning the severity of each incident (e.g., the size of each spill, its location in his cell, and whether the toilet water was mixed with feces or urine) or the extent of his exposure (e.g., whether there was any contact between the spills and Robinson's person or property). "There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned," *Bell*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)), and Robinson has failed to present evidence demonstrating that the conditions of his confinement passed this threshold. Accordingly, as to these claims we will affirm.

**D. Post-conviction Conditions of Confinement**

Finally, Robinson claims three violations of the Eighth Amendment relating to his conditions of confinement after his conviction. First, he alleges Correctional Officers Henry and Harris placed foreign objects in his food. Next, he alleges Correctional Officers Henry, Wagner, and Moore deprived him of sleep by kicking or pounding on his door and calling his name to wake him up on several occasions. Finally, he alleges Correctional Officers Beckles, Downing, Henry, and Mohr called him a snitch in earshot of other inmates. The District Court granted summary judgment on all three claims in Appellees' favor. We will affirm.

The Eighth Amendment requires "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In addition, prison officials "must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation mark omitted) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To state an Eighth Amendment violation for conditions of confinement, an inmate must demonstrate (1) a deprivation that is "objectively, sufficiently serious" such that it "result[s] in the denial of 'the minimal civilized measure of life's necessities'" and (2) "deliberate indifference" on the part of prison officials to "inmate health or safety." *Id.* at 834 (internal quotation marks omitted).

Addressing Robinson's first condition-of-confinement claim stemming from his allegations that Correctional Officers Henry and Harris placed foreign objects in his food, the District Court concluded the objects did not amount to a "substantial deprivation, or

13

anything more than temporary distress." *Robinson*, 117 F. Supp. 3d at 545. Robinson

provided evidence in support of only one incident of foreign objects in his food, which he

described as "two little pieces . . . of metal." J.A. 139. Under well-settled Eighth

Amendment principles, Robinson failed to establish an objectively, sufficiently serious

deprivation to survive summary judgment. *See Hamm v. DeKalb Cty.*, 774 F.2d 1567,

1575 (11th Cir. 1985) ("The fact that [prison] food occasionally contains foreign objects .

. . while unpleasant, does not amount to a constitutional deprivation."); *LeMaire v.*

*Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (same); *Green v. Atkinson*, 623 F.3d 278, 281

(5th Cir. 2010) ("A single incident of food poisoning or finding a foreign object in food

does not constitute a violation of the constitutional rights of the prisoner affected.");

*Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (ruling that presence of foreign

objects in food was insufficient to prove deliberate indifference).

Robinson's second condition-of-confinement claim fares no better. According to

Robinson, Correctional Officers Henry, Wagner, and Moore deprived him of sleep by

repeatedly kicking or pounding on his door and calling his name to wake him up "for no

apparent reason." J.A. 142. At most, however, Robinson was awakened several times

over a period of several years. And he acknowledged in his deposition that he can "go to

sleep when [he] want[s]" and "wake up when [he] want[s]." J.A. 142. The District Court

thus properly observed that Robinson's allegations of sleep deprivation were "not

sufficiently serious to implicate the Eighth Amendment" and that "prison administrators

should be accorded wide-ranging deference in the adoption and execution of policies and

14

practices that are needed to preserve internal order and to maintain institutional security."
*Robinson*, 117 F. Supp. 3d at 546. Even viewing the record in the light most favorable to Robinson, a reasonable jury could not return a verdict in his favor because such inconveniences do not amount to deprivations of the minimal civilized measure of life's necessities. *Peterkin v. Jeffes*, 855 F.2d 1021, 1026-28 (3d Cir. 1988) (affirming the district court's finding that sound from inmates talking and noise from televisions and radios in prison, "while it may be irritating to some prisoners, cannot fairly be said to inflict cruel and unusual punishment").

Last, Robinson alleges Correctional Officers Beckles, Downing, Henry, and Mohr created a dangerous condition of confinement by calling him a snitch in earshot of other inmates. The District Court ruled that Robinson failed to "substantiate [his] claim[]," observing that "repeated investigations and opportunities for [Robinson] to present such evidence have yielded nothing." *Robinson*, 117 F. Supp. 3d at 548. On appeal, Robinson argues that the District Court improperly weighed the evidence and made credibility determinations about witnesses, and that, although the snitch comments have not resulted in bodily harm, he lives in constant fear of retaliation from other inmates.

While these allegations are particularly troublesome, as even the Appellees acknowledged during oral argument that calling an inmate a snitch may have dire consequences when overheard by other inmates, *see* Oral Argument at 33:40-33:50, we ultimately agree with the District Court that there is insufficient evidence for a reasonable jury to conclude that the Correctional Officers "have, with deliberate indifference,

15

exposed [Robinson] to an unreasonable risk of harm." *Robinson*, 117 F. Supp. 3d at 548 (internal quotation marks omitted). The Eighth Amendment imposes on prison officials a duty "to protect prisoners from violence at the hands of other prisoners," *Farmer*, 511 U.S. at 833, and that maxim is especially pertinent where, as Robinson contends in this case, it was prison officials that engendered the conditions for violence in the first place. Even so, the Eighth Amendment extends only to objectively, sufficiently serious deprivations, and Robinson has failed to offer sufficient evidence to support his claim.

In his deposition, Robinson stated that he had been called a snitch since 2008, and he submitted declarations by two inmates, Larry Pierce and Daniel Irwin, summarily asserting that Robinson has been called a snitch several times. But when Robinson was asked, "[w]hat has been the result of this claim that you're a snitch, what has happened to you, if anything," Robinson simply replied, "[it t]urned a lot of inmates against me that want to do something to me." J.A. 143. He further asserted in his deposition that inmates were "always sending death threats and stuff like that," J.A, 143, but offered no documents or other evidence to substantiate this assertion and acknowledged that he had not had "any one-on-one contact with any inmate" because of the snitch comments or "had any fights with any inmates." J.A. 144. As for the Pierce and Irwin declarations, they offer no details that would provide credence to their threadbare recital of Robinson's snitch allegations, and we have required more than conclusory affidavits to create a genuine issue of material fact. *MD Mall Assocs.*, 715 F.3d at 485 n.6. In the absence of any substantiation of his allegations, especially in light of the alleged pervasiveness of the

snitch comments, Robinson has failed to produce sufficient evidence from which a reasonable trier of fact could find in his favor.

In sum, we will affirm the District Court's entry of summary judgment on Robinson's post-conviction condition-of-confinement claims.

**IV. Conclusion**

For the foregoing reasons, we will reverse the District Court's judgment on Robinson's excessive force claim against Correctional Officer DeAllie for allegedly macing his cell. We will further vacate and remand the District Court's judgment on Robinson's excessive force claim against Correctional Officer Beckles for allegedly injuring his hand while removing the handcuffs. Finally, we will remand Robinson's excessive force claim against Correctional Officer Downing for allegedly striking Robinson in the face because the District Court failed to address this claim. We will affirm the District Court's judgment on all remaining counts.