Dissenting opinion filed by Circuit Judge WALLACH.
HUGHES, Circuit Judge.
Plaintiffs sued Defendants in 2010 for infringing U.S. Patent No. 6,296,805. After our most recent remand in this case, the district court invalidated claims 24 and 25 of U.S. Patent No. RE44,153, the reissue of the ’805 patent. We conclude that the district court possessed subject matter jurisdiction when it granted summary judgment, that the court properly followed our most recent mandate, and that the court properly exercised its discretion to deny ArcelorMittal’s Rule 56(d) request. Accordingly, we affirm.
I
A
The dispute between Plaintiffs (collectively, ArcelorMittal) and Defendants (Civ. No. 10-050-SLR (the 050 case)) began in January 2010, when ArcelorMittal first filed a complaint in the United States District Court for the District of Delaware alleging that Defendants infringed the ’805 patent. Defendants counterclaimed for declarations of non-infringement and invalidity of the ’805 patent. After a five-day trial, a jury found that Defendants did not infringe the then-asserted claims, and that the claims were invalid as anticipated and obvious.
In November 2012, wé reversed'the district court’s claim construction in part and concluded that, as a matter of law, the claims were not anticipated. ArcelorMittal France v. AK Steel Corp., 700 F.3d 1314, 1317 (Fed. Cir. 2012) (ArcelorMittal I). We then remanded for limited proceedings to address only literal infringement and commercial success. Id. at 1326.
Thereafter, in April 2013, the United States Patent & Trademark Office (PTO) reissued the ’805 patent as the RE’153 patent. ArcelorMittal subsequently filed two patent infringement suits in the United States District Court for the District of Delaware against the defendants based on events occurring after the RE’153’s issuance that allegedly infringed the RE’153 patent: (1) Civ. No. 13-685-SLR, against AK Steel (the 685 case); and (2) Civ. No. 13-686-SLR, against Severstal Dearborn and Wheeling-Nisshin (the 686 case). The following month, ArcelorMittal moved to amend its complaint in the 050 case to *1368 substitute allegations of infringement of the RE’153 patent for the allegations of infringement of the surrendered ’805 patent. Defendants moved in June 2013 for summary judgment on the grounds that claims 1-23 of the RE’153 patent were improperly broadened, and thus invalid.
The district court concluded that summary judgment was warranted because claims 1-23 had been improperly broadened, and denied the pending motion to amend the complaint as moot. ArcelorMit-tal filed a letter seeking to clarify the status of claims 24 and 25, claiming that they were not asserted in the 050 case. In an order governing the 050, 685, and 686 cases, the district court clarified that it was invalidating not just RE’153 claims 1-23, but also claims 24 and 25.
ArcelorMittal appealed. We affirmed the invalidity of claims 1-23 of the RE’153 patent, but reversed as to the invalidity of claims 24 and 25 after finding those claims were not broadened on reissue. ArcelorMittal France v. AK Steel Corp., 786 F.3d 885, 892 (Fed. Cir. 2015) (ArcelorMittal II). We remanded for “further proceedings consistent with [that] opinion and our mandate in ArcelorMittal Id.
B
In July 2015, on remand in the 685 case, ArcelorMittal moved to amend its complaint to substitute allegations of infringement of U.S. Patent No. RE44,940—a continuation of the application resulting in the RE’153 patent—for the allegations of infringement of the RE’153 patent.
Two months later, in the 050 case, Arce-lorMittal moved to dismiss for lack of jurisdiction because, according to Arcelor-Mittal, claims 24 and 25 of the RE’153 patent—the only claims not invalidated— were not part of the case on remand. In its supporting brief, ArcelorMittal contended that, based on pretrial elections made with respect to the ’805 patent, it had only asserted five claims of the RE’153 patent, all of which had been invalidated in Arce-lorMittal II. It also said that it was prepared to issue Defendants a covenant not to sue. The same day, Defendants moved for summary judgment of noninfringement and invalidity of claims 24 and 25 of the RE’153 patent. Briefing on both motions completed on October 23, 2015. To its reply brief in support of its motion to dismiss, ArcelorMittal attached an unsigned draft covenant not to sue.
Four days later, the district court held a telephonic hearing on the pending motions. More than three weeks after the hearing, ArcelorMittal submitted to the court a letter attaching an executed covenant not to sue Defendants and their customers under the RE’153 patent. Although the covenant was facially unconditional, ArcelorMittal said in its enclosing letter that it was “tendering] the covenant conditioned on resolution of its motion to amend (D.I. 31) in the 685 case.” J.A. 5218. ArcelorMittal further explained that it imposed that condition to “avoid mooting the 685 case” by “divesting the [c]ourt of jurisdiction” and that it stood “ready to deliver the covenant unconditionally upon resolution of’ the motion to amend. Id.
In one order, the trial court granted Defendants’ motion for summary judgment, denied ArcelorMittal’s motion to dismiss for lack of subject matter jurisdiction in the 050 case, and granted ArcelorMit-tal’s motion to amend its complaint in the 685 case. ArcelorMittal appeals the denial of its motion to dismiss for lack of subject matter jurisdiction and the grant of summary judgment of invalidity of RE’153 claims 24 and 25. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
II
We review the court’s denial of a motion to dismiss for lack of subject mat *1369 ter jurisdiction de novo and the underlying factual findings for clear error. Hewlett-Packard, Co. v. Acceleron LLC, 587 F.3d 1358, 1361 (Fed. Cir. 2009). Under Medlm-mune, Inc. v. Genentech, Inc., courts may hear declaratory judgment actions if “the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality.” 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)) (emphasis added).
A
ArcelorMittal first argues that it never asserted RE’153 claims 24 and 25 in the 050 litigation against Defendants. We disagree. After the first remand, AK Steel moved for summary judgment of non-infringement of claims 1-23 of the RE’153 patent. In its supporting brief, AK Steel expressed its view that the court’s grant of the motion “would leave claims 24-25 of the [RE’153] patent for the limited determination on obviousness remanded by the Federal Circuit.” J.A. 4540. Though Arce-lorMittal opposed the motion for other reasons, it did not dispute AK Steel’s statement that claims 24 and 25 would remain for the court’s further resolution. Then, in the second appeal, ArcelorMittal (1) argued that, “even if only reissue claims 24 and 25 remain, there is evidence that those claims were infringed during the time period at issue in the 050 case,” and (2) asked us to “remand the 050 case so that the district court can address infringement of reissue claims 24 and 25” even if we affirmed the invalidity of claims 1-23. J.A. 5199-5200. We granted ArcelorMittal that relief by “remand[ing] for further proceedings” because we declined “to reach the merits” on claims 24 and 25, which we held were improperly invalidated. ArcelorMittal II, 786 F.3d at 892.
ArcelorMittal now argues that we remanded the 050 case in ArcelorMittal II so that ArcelorMittal could consider whether to assert claims 24 and 25, which it says the district court introduced into the case by invalidating them sua sponte. We find that ArcelorMittal’s statements to this court and its tacit acceptance of Defendants’ representations about the litigation status of claims 24 and 25 reflect ArcelorMittal’s continued attempt to assert those claims in the 050 case. Also, our mandate contemplated “further proceedings” in the 050 case, which were necessary only because ArcelorMittal told us that it was asserting RE’153 claims 24 and 25. In light of “all the circumstances,” there was a substantial controversy between the parties over RE’153 claims 24 and 25. See MedImmune, 549 U.S. at 127, 127 S.Ct. 764. Therefore, the district court correctly considered RE’153 claims 24 and 25 to be asserted on remand.
B
Next, ArcelorMittal argues that its dispute with Defendants became moot when ArcelorMittal conditionally tendered its covenant to Defendants. We hold that it did not.
Defendants’ counterclaims arise under the Declaratory Judgment Act, which states that, “[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration.” 28 U.S.C. § 2201. Because “the phrase ‘case of actual controversy’ in the [Declaratory Judgment] Act refers to the type of ‘Cases’ and ‘Controversies’ that are justiciable under Article III,” these requirements are coextensive. MedImmune, 549 U.S. at 127, 127 S.Ct. 764 (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937)); see *1370 also Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1335 (Fed. Cir. 2008) (“[A]s long as the suit meets the case or controversy requirement of Article III, a district court may have jurisdiction over a declaratory judgment action.”). Accordingly, we may either employ the Medlmmune standard or draw from the “specific but overlapping doctrines rooted in the same Article III inquiry,” including “lack of ■ mootness.” Prasco, 537 F.3d at 1336. Thus, the mootness doctrine may serve as a “helpful guide in applying the all-the-circumstances test.” Id.; see Sandoz Inc. v. Amgen Inc., 773 F.3d 1274, 1278 (Fed. Cir. 2014). Yet we remain mindful that “there is no bright-line rule for determining whether an action satisfies the case or controversy requirement,” Prasco, 537 F.3d at 1336, and that “Medlmmune makes clear ... that ‘all 'the circumstances’ must be considered when making a justiciability determination,” Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 883 (Fed. Cir. 2008).
“A case becomes moot—and therefore no longer a ‘Case’ or ‘Controversy’ for purposes of Article III—‘when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.’ ” Already, LLC v. Nike, Inc., 568 U.S. 85, 133 S.Ct. 721, 726, 184 L.Ed.2d 553 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam)) (some-internal quotation marks omitted). Although a patentee’s grant of a covenant not to sue a potential infringer can sometimes deprive a court of subject matter jurisdiction, see Arris Grp., Inc. v. British Telecomm. PLC, 639 F.3d 1368, 1380 (Fed. Cir. 2011), the patentee “bears the formidable burden of showing” “that it ‘could not reasonably be expected’ to resume its enforcement efforts against” the covenanted, accused infringer, Already, 133 S.Ct. at 727 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). In this context, that requires ArcelorMittal to show that it actually granted a covenant not to sue to Defendants, and that the covenant enforceably extinguished any real controversy between the parties related to infringement of the RE’153 patent.
Taking into account “all the circumstances,” we find on the particular, unusual facts of this case that ArcelorMittal did not moot its controversy with Defendants over the RE’153 patent. Although this case has a convoluted history, the reason that the court retained jurisdiction is quite simple: At no time before the court entered summary judgment did ArcelorMittal unconditionally assure Defendants and their customers that it would never assert RE’153 claims 24 and 25 against them.
ArcelorMittal certainly had ample opportunity to provide the unconditional assurances required to defeat jurisdiction. It did not provide a covenant (1) when the RE’153 patent issued in April 2013; (2) in response to Defendants’ June 2013 summary judgment brief explaining its view that claims 24-25 were asserted; or (3) in May 2015, after our second remand, which was to allow ArcelorMittal to continue its assertion of claims 24 and 25 against Defendants for their pre- and post-RE’153 issuance conduct.
ArcelorMittal’s first indication that it might grant a covenant not to sue was in its September 4, 2015 opening brief in support of its motion to dismiss for lack of jurisdiction. ArcelorMittal maintained that RE’153 claims 24 and 25 were not part of the case on remand, but that even if they were, it was “prepared to grant a covenant against suit to Defendants for all claims of the [RE’153] patent in order to resolve any remaining issue.” J.A. 4956; see, e.g., J.A. 4950. ArcelorMittal’s October 23 reply supporting its motion to dismiss attached an unexecuted covenant as an exhibit. See *1371 J.A. 5103, 5107-08. Neither of these statements was an unconditional assurance that Defendants could rely upon as an enforceable covenant not to sue.
Finally, the letter and executed covenant ArcelorMittal filed with the court on November 18, 2015, taken together, were also qualified. ArcelorMittal tendered the covenant “conditioned on resolution of its motion to amend (D.I. 31) in the 685 case.” J.A. 5218. Notably, ArcelorMittal expressed that it expected that further action—i.e., unconditional delivery—would have to be taken in order to make the covenant effective. See id. (“Consequently, Arcelor stands ready to deliver the covenant unconditionally upon resolution of that motion”). The district court, well within its discretion in managing its docket, resolved the 050 case summary judgment motion without having first resolved the motion to amend in the 685 case. Accordingly, the letter’s condition remained unsatisfied, and-no unconditional covenant was ever unconditionally delivered to Defendants before the court resolved the merits of the validity of claims 24 and 25 of the RE’153 patent.[1]
This outcome results from events that were entirely within ArcelorMittal’s control. As reflected above, ArcelorMittal could have, at any point before December 4, 2015, delivered an unconditional, executed covenant not to sue that would have mooted the dispute between the parties over the remaining claims of the RE’153 patent. Instead, as ArcelorMittal explained-at the October 27 hearing and in its November 18 letter, it designed its actions specifically to maintain jurisdiction in the 685 case—a case which also would have been moot had ArcelorMittal tendered Defendants an effective covenant not to assert the RE’153 patent. J.A. 5251 (“[I]f the Court says there’s no jurisdiction on ’153, that is the only patent-that’s in the [685] case right now, so if we were to sign a covenant against suit ..., it would get rid of the [685] case.”); J.A. 5218 (“Arcelor tends the covenant conditioned on resolution of its motion to amend (D.I. 31) in the 685 case. As explained at the hearing, this condition is necessary to avoid mooting the 685 case and thereby divesting the Court of jurisdiction.”). In this fact-specific context, we must give effect to ArcelorMittal’s express intent to make conditional delivery of an unconditional covenant mean something different than unconditional delivery of an unconditional covenant.[2] The conditional nature of *1372 the covenant’s delivery here differentiates this case from others where we have found jurisdiction defeated by less than a fully executed covenant not to sue. See, e.g., Organic Seed Growers & Trade Ass’n v. Monsanto Co., 718 F.3d 1350, 1358 (Fed. Cir. 2013) (finding that a party’s “representations unequivocally disclaiming] any intent to sue appellants]” were, as a matter of judicial estoppel, sufficient to bind the representing party (emphasis added)).
Therefore, taking into account not solely the covenant’s terms but also the circumstances of its delivery, we find no error in the district court’s retention of subject matter jurisdiction.
Ill
We address ArcelorMittal’s other arguments briefly. First, we conclude that the district court correctly implemented our mandate by limiting its analysis to noninfringement and commercial success of RE’153 claims 24 and 25. In ArcelorMittal II, we “remand[ed] for further proceedings consistent with th[e] opinion and our mandate in ArcelorMittal I." 786 F.3d at 892. Thus, we incorporated ArcelorMittal Fs limited remand for consideration of commercial success and non-infringement. ArcelorMittal argues that the reissuance of the ’805 patent as the RE’153 patent required the district court to assess the obviousness of the RE’153 claims anew. But we previously held that the reissuance does not alone constitute new evidence excusing adherence to the mandate. Id. at 889. Moreover, the reissuance preceded the Ar-celorMittal II mandate, and thus cannot be an intervening development. Therefore, the district court correctly considered RET53 claims 24 and 25 under the limited proceedings that the ArcelorMittal I mandate required.
Finally, the district court acted within its discretion when it refused Arce-lorMittal’s Rule 56(d) request for new discovery on the commercial success of RE’153 claims 24 and 25. See Baron Servs., Inc. v. Media Weather Innovations LLC, 717 F.3d 907, 912 n.6 (Fed. Cir. 2013); Murphy v. Millennium Radio Grp., LLC, 650 F.3d 295, 310 (3d Cir. 2011). The district court found significant that Arce-lorMittal did not explain how it could demonstrate a nexus between any commercial success evidence and the purported invention of RE’153 claims 24 and 25. We find no error in the district court’s reasoning.
IV
Because the district court possessed jurisdiction and correctly entered summary judgment, we affirm.
AFFIRMED

. We note that the district court issued one order that resolved the 050 case motion for summary judgment and granted the 685 case motion to amend. We need not resolve the metaphysical question of whether one decision came before the other, because as Arce-lorMittal's letter made clear, it intended that it would separately deliver an executed covenant to Defendants after the 685 case motion to amend was resolved. This never happened.

. This is true as an application of the Medlm-mune "all-the-circumstances” approach and in consideration of contract law principles— both of which permit us to look outside the terms of the covenant itself. See MedImmune, 549 U.S. at 127, 127 S.Ct. 764; Linear Tech. Corp. v. Micrel, Inc., 275 F.3d 1040, 1050 (Fed. Cir. 2001) (holding that certain communications were not offers because they did “not indicate [the party's] intent to be bound, as required for a valid offer”); Leeds v. First Allied Conn. Corp., 521 A.2d 1095, 1097 (Del. Ch. 1986) (“It is elementary that determination of the question whether a contract has been formed essentially turns upon a determination whether the parties to an alleged contract intended to bind them-selves contractually. A court determining if such intention has been manifested ... determines this question of fact from the overt acts and statements of the parties.”); Neenan v. United States, 112 Fed.Cl. 325, 329 (2013), aff'd, 570 Fed.Appx. 937 (Fed. Cir. 2014) ("An offer does not exist unless the offeror manifests an intent to be bound.”); Restatement (Second) of Contracts § 26 (“A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not *1372 intend to conclude a bargain until he has made a further manifestation of assent.”); see also Restatement (Second) of Contracts §§ 19, 24, 103, 217.